1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10        SOUTHERN DISTRICT OF CALIFORNIA
11
12  KYLE BLAKE GREENSPAN,                ) Case No. 12-cv-2402-AJB (BGS)
                                          )
13                      Petitioner,       ) ORDER:
    v.                                    )
14                                        ) 1) OVERRULING PETITIONER'S
                                          ) OBJECTIONS (Doc. No. 16);
15  MATTHEW CATE, Secretary,             )
                                          ) 2) ADOPTING THE REPORT AND
16                      Respondent.       ) RECOMMENDATION OF THE
                                          ) MAGISTRATE JUDGE (Doc. No.
17                                        ) 15);
                                          )
18                                        ) 3) DENYING PETITION FOR WRIT
                                          ) OF HABEAS CORPUS (Doc. No. 1);
19                                        )
                                          ) 4) DENYING REQUEST FOR
20                                        ) EVIDENTIARY HEARING (Doc.
                                          ) No. 1); and
21                                        )
                                          ) 5) DENYING CERTIFICATE OF
22                                        ) APPEALABILITY
                                          )
23  _____ )
24
25        On October 3, 2012, Kyle Blake Greenspan ("Petitioner"), a state prisoner,
26  proceeding with the assistance of counsel, filed a Petition for Writ of Habeas Corpus.
27  (Doc. No. 1.)  Petitioner seeks relief from his July 29, 2008 convictions of forcible rape
28  and sexual battery in San Diego County Superior Court Case No. SCD210048.  Peti-

1

tioner served a three year prison sentence and is currently on a five year parole imposed by the Superior Court.  As a result of his conviction, Petitioner is required to register as a sex offender pursuant California law.  On April 17, 2013, Respondent filed an answer. (Doc. No. 10.)  On June 21, 2013, Petitioner filed his Traverse. (Doc. No. 14.) On September 4, 2013, Magistrate Judge Skomal issued a Report and Recommendation ("R&R") recommending that the Petition be denied in its entirety. (Doc. No. 15.)  On September 24, 2013, Petitioner timely filed his objections to the R&R. (Doc. No. 16.) For the reasons stated below, the Court ADOPTS Magistrate Judge Skomal's well-reasoned R&R and DENIES the Petition for Writ of Habeas Corpus.

## I.   BACKGROUND

## A.   Factual Background

The following facts are taken from the unpublished California Court of Appeal ("Court of Appeal") Opinion in *People v. Greenspan*, case no. D054840 (Cal. Ct. App. Mar. 9, 2011.)  Petitioner does not dispute the accuracy of the court's factual summary. The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).  *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (finding factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary).

R.A. was 23 years old at the time of trial and testified that she had known Greenspan from grade school, but in the years afterwards they had only brief, sporadic interactions, including once in 2004, when they kissed in a friend's college dormitory. In June 2007, they renewed contact and exchanged text messages and phone calls. In the early morning of July 7, 2007, he accepted her invitation to her apartment to watch a movie with her and her friends. He seemed drunk when he arrived and he drank beer there.

After the movie ended they went upstairs to her bedroom and sat on her bed reminiscing about grade school. At one point he playfully pushed her chest such that she lay on the bed, but she immediately came back up. He tried to kiss her but she turned her head. While he was still fully clothed, he pushed her on the bed, pressed his weight on her, hooked one of his arms around her shoulder and, with his other forearm, pushed down on her lower stomach while he kept trying to kiss her. He raped her. He ejaculated on her shirt. She ran to the bathroom, changed her shirt and ran downstairs crying. At the time of the incident she was five feet three inches tall and weighed 130 pounds.

R.A.'s crying woke up one of her roommates at approximately 3:30 a.m., and R.A. told her Greenspan had raped her, and he was asleep on her bed. The roommate told her to stay in the laundry room while she asked him to leave the house. The roommate testified that he was lying of R.A.'s bed wearing only his boxer shorts. She woke him up and repeatedly told him he needed to get dressed and leave. He kept asking "What did I do?" She reiterated that he had to leave. She walked him to the front porch and he asked her if R.A. thought he had raped her. The roommate responded, "Okay, good. So you do know what you did. You need to leave."

At approximately 4:00 a.m., while R.A. was still in the laundry room, she telephoned a girlfriend–who did not answer–so she telephoned that friend's boyfriend. He testified that R.A. was crying and sounded shaken up. His girlfriend spoke to R.A. and they immediately went to R.A.'s apartment, where she was crying and appeared "traumatized." They took her to the hospital, where she cried during an interview with a police officer. In a sexual assault response team (SART) exam, a forensic nurse examined her and determined that she had vaginal redness that was consistent with either consensual or nonconsensual sexual intercourse. The parties stipulated that tests done on R.A.'s shirt by the San Diego Police Department's Forensic Unit showed that sperm from the shirt matched Greenspan's DNA.

Greenspan was five feet eleven inches tall and weighed approximately 195 pounds at the time of the incident. He testified at trial that after the movie he and R.A. talked in her bedroom. According to Greenspan, his sex with R.A. was consensual, he was not wearing a condom and ejaculated on her chest. She wiped herself with her shirt. He was shocked that night when R.A.'s roommate woke him and told him he had to leave. He asked the roommate whether R.A. thought he had raped her, denied doing so, and asked to speak to R.A. The roommate refused that request. He felt sad that he was blamed for making R.A. cry, and he telephoned her as he was walking from her residence, but she did not answer.

The parties stipulated that approximately one week after the incident, a detective helped R.A. make a pretext telephone call to Greenspan. The jury heard a recording of the call, in which Greenspan repeatedly apologized to R.A., at one point stating, "I am so sorry, I know that you don't think that's good enough or I guess I took it the wrong way and I didn't know." R.A. told him he had raped her and he replied that he did not feel she had pushed him away. R.A. told him she needed to hear him say why he was sorry and he replied, "Because I guess I took advantage of you and I am sorry and I didn't mean to hurt you in any way in that way because, you know, I would never hurt you." He continued, "I have two older sisters, I would never ever do that."

(Lodg. No. 7, at 2-4.)

The defense theory at trial was that the sexual encounter between Greenspan and R.A. was consensual. (*See* Lodg. No. 2, Reporter's Transcript ("RT") vol. 2 at 289-335.)

## B.   Procedural Background

Petitioner was charged with rape (Cal. Penal Code § 261(a)(2)) and sexual battery (Cal. Penal Code § 243.4(a)).  The trial began on July 23, 2008. Both sides rested after a

12cv2402

little over two days of trial.  The jury deliberated for approximately two hours before finding Petitioner guilty of both charges.  (Lodg. No. 1, Clerk's Transcript ("CT") at 0001-0002; 0283-0296.)  Defense counsel moved to dismiss, or in the alternative for a continuance of the sentencing to permit additional forensic investigation into potential grounds for a new trial.  The court denied the dismissal motion but granted a 60-day continuance. (Lodg. No. 2, RT vol. 3 at 650-658.)

On November 20, 2008 the court reconvened and acknowledged a pending motion for new trial.  By this time, Petitioner had replaced his trial counsel, Bradley C. Patton, with substitute retained counsel Catherine Denevi. (Lodg. No. 1, CT vol. 2 at 265.)  New counsel moved to compel disclosure of juror identification information in order to investigate alleged misconduct.  That motion was denied. (Lodg. No. 2, RT vol. 4 at 660-661.)  On February 25, 2009, the court held a hearing for the motion for new trial which alleged instances of legal error, juror misconduct, and evidentiary challenges to the verdict. (Lodg. No. 1, CT vol. 2 at 174-219.)  The court accepted as true all the affidavit representations of defense counsel's experts and private investigators as well as counsel's representations about what other witnesses would say. (Lodg. No. 2, RT vol. 5 at 670-682.)  The court denied the motion after addressing each of the motion's grounds presented, assessed the significance or insignificance of each item of evidence, and evaluated the credibility of the witnesses and strength of the trial evidence.  The judge concluded "while I think this is a very sad case, I don't think it is a miscarriage of justice." (*Id.* at 682, 685: "I agree with probation, I probably would have put him on probation if that had been an option in this case.") The court imposed the lower term of three years on count one and the lower term of two years on count two, with the latter sentence stayed, for a total prison term of three years, plus payment of restitution, followed by a period of parole. (*Id.* at 685-687.)  The court further ordered that after his release, Petitioner would be required to register as a sex offender pursuant to Cal. Penal Code § 290. (*Id.* at 687.)

Petitioner appealed his conviction, alleging trial error related to the court's handling of a juror's note, potential juror misconduct, and the giving of one jury instruction. (Lodge. No. 4 (Cal. Ct. App. Case No. D054840).)  In February 2010, while his direct appeal remained pending, Petitioner also filed a Petition for Writ of Habeas Corpus in the California Court of Appeal. (Lodg. Nos. 12, 13, Case No. D056822.)  "In that petition, Greenspan alleged ineffective assistance of trial counsel for failure to accurately convey a pre-trial offer, failure to investigate and present impeachment evidence in the form of R.A.'s post-incident conduct as depicted on a videotape, and failure to present character witnesses favorable to him."  The court, at Petitioner's request, consolidated the habeas petition with the direct appeal. (Lodg. No. 13.)  The Court of Appeal issued an order to show cause returnable in Superior Court in this matter and directed the Superior Court to hear and determine the matter. (*Id.*)

On October 18, 2010, the Superior Court denied Petitioner's Habeas petition and rejected on the merits each of the three ineffective assistance of trial counsel alleged. (Lodg. No. 16 at 2 (Cal. Superior Court, Case No. HC20063).)  On March 9, 2011, the appellate court decided Greenspan's direct appeal on the merits, affirming the judgment and denying him relief on any of his alleged trial errors.  (Lodg. No. 7, slip op.)  On April 19, 2011, Petitioner filed a Petition for Review to the California Supreme Court. In his Petition for Review, Petitioner presented only one issue: "Whether the Court of Appeal erred in affirming the exclusion under Evidence Code §§ 352 and 782, [of] photos of the complainant in a rape prosecution posted on her Facebook page showing her partying in Las Vegas days after she claimed she had been raped?" (Lodg. No. 9 (Cal. Supreme Ct., Case No. S192405).)  The California Supreme Court denied the petition.  (Lodg. No. 18.)

On October 3, 2012, Petitioner filed a federal Petition for Writ of Habeas Corpus challenging his state conviction on two grounds. Ground One alleges Petitioner was denied his right to confront and cross-examine the complaining witness, in violation of the Sixth and Fourteenth Amendment to the United States Constitution, by the trial court

12cv2402

"excluding certain Facebook photos from the victim's Law Vegas trip a few days after the incident.  Ground Two alleges ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendment for three alleged deficiencies: (1) trial counsel's failure to convey to Petitioner the prosecution's potential pre-trial offer to allow him to plead guilty to a reducible felony that did not require registration as a sex offender; (2) trial counsel's failure to investigate and present evidence of the complainant's conduct subsequent to the incident that contradicted her testimony at trial; and (3) trial counsel's failure to interview witness and present character witnesses on behalf of Petitioner. (Doc. No. 1.)

On April 17, 2013, Respondent filed an answer. (Doc. No. 10.) Petitioner filed his Traverse on June 21, 2013. (Doc. No. 14.)  Magistrate Judge Skomal issued the R&R on September 4, 2013, recommending this Court deny the Petition in its entirety. (Doc. No. 15.)  Petitioner filed timely objections to the R&R on September 24, 2013, challenging only the R&R's conclusion as to Ground One and part one of Ground Two. (Doc. No. 16.)

## II.   LEGAL STANDARDS

### A.   Review of the Report and Recommendation

Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) provide district judges' duties regarding a magistrate judge's report and recommendation. The district court judge should "make a de novo determination of those portions of the report to which the objection is made," and "may accept, reject, or modify in whole or in part, the finding or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Remsing*, 874 F.2d 614, 617 (9th Cir. 1989).  However, in the absence of timely objection(s), the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), Advisory Committee Notes (1983); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

**B.    Habeas Corpus Relief**

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls review of this Petition.  *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted with respect to any claim adjudi- cated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determina- tion of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d)(1-2); *Early v. Packer*, 537 U.S. 3, 8 (2002).  In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferen- tial review, inquiring only whether the state court's decision was objectively unreason- able.  *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in United States Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those decisions to the facts of a particular case.  *Id.*  Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

1   "Clearly established federal law" means the law as determined by the United

2   States Supreme Court.  28 U.S.C. § 2254(d)(1).  "Circuit precedent may provide 'persua-

3   sive authority' for purposes of determining whether a state court decision is an 'unreason-

4   able application' of Supreme Court precedent," but "only Supreme Court holdings are

5   binding on state courts, and 'only those holdings need be reasonably applied.'" *Rodgers*

6   *v. Marshall*, 678 F.3d 1149, 1155 (9th Cir. 2012) (citation omitted); *see also Campbell v.*

7   *Rice*, 408 F.3d 1166, 1170 (9th Cir. 2005).  "[W]hen a Supreme Court decision does not

8   'squarely address[] the issue . . . it cannot be said, under AEDPA, there is 'clearly

9   established' Supreme Court precedent addressing the issue," and the federal court "must

10  defer to the state court's decision." *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009);

11  *see also Carey v. Musladin*, 549 U.S. 70, 77 (2006) (the lack of holdings from the

12  Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1)).

13      In applying 28 U.S.C. § 2254(d)(2), federal habeas courts must defer to reasonable

14  factual determinations made by the state courts, to which a statutory presumption of

15  correctness attaches.  28 U.S.C. § 2254(e)(1); *see Schriro v. Landrigan*, 550 U.S. 465,

16  473- 74 (2007).  To determine whether habeas relief is available under § 2254(d), the

17  Court "looks through" to the last reasoned state court decision as the basis for its

18  analysis.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801-8-3 (1991).  If the dispositive state

19  court order does not "furnish a basis for its reasoning," federal courts must conduct an

20  independent review of the record to determine whether the state court's decision is

21  contrary to, or an unreasonable application of, clearly established Supreme Court law.

22  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by*

23  *Andrade*, 538 U.S. at 75- 76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

24  2003).

25  **III.   DISCUSSION**

26      Petitioner makes two specific objections to the R&R.  First, Petitioner objects to

27  the finding of the R&R that the California Court of Appeal's decision rejecting his claim

28  that he was denied his Sixth Amendment right to confront his accuser based on the

8

exclusion of the accuser's Facebook photos, was not contrary to, or an unreasonable application of, clearly established federal law as interpreted by the United States Supreme Court.  Second, he objects to the failure of the R&R to apply a *de novo* standard of review to his claim he was denied effective assistance of counsel because of the state court's refusal to follow its own procedure and conduct an evidentiary hearing where the petitioner alleged facts that, if true, would entitle him to relief. (Doc. No. 16 at 1-2.) Petitioner does not object to the R&R's recommendation to deny relief based on the second and third parts of the ineffective assistance of counsel claim.  (*Id.* at 2.)  The Court makes a de novo review of those portions of the R&R Petitioner objects to.

**A.      Ground One: Evidentiary Ruling Excluding Las Vegas Photographs**

Petitioner disputes, under the "objectively unreasonable" standard of review used by the R&R, that he is not entitled to relief on Ground One of his Petition.  Specifically, Petitioner contends that the AEDPA does not require deference to a state court decision that identified the correct legal rule but unreasonably applied it to the facts at hand. According to Petitioner, the Court of Appeal unreasonably applied the law to the facts because the Facebook photos related directly to the complainant's credibility as well as that of her roommates and friends who testified for the prosecution.

The photographs at issue were pictures posted on R.A.'s Facebook page on July 18, 2007, showing a trip she had made to Las Vegas shortly after the incident.  The pictures included comments such as "[if] [R.A.] and I only knew that this picture embodied the rest of the night . . ."; "[d]amn, hike your skirt up a little more, slut," and "THIS IS A THANK YOU TO [R.A.] FOR MAKING ME UNDERWEAR!!!!!" (Lodg. 1, CT vol. 2.)  Prior to trial, the prosecution moved to exclude these photos, along with other photos posted prior to July 7, 2007, pursuant to California Evidence Code §§ 782 and 1103.  The trial court excluded evidence of three photos depicting R.A.'s trip to Las Vegas.  Defense argued that these photos were relevant to rebut claims R.A. made to Petitioner, in the pretext call of July 12, 2007, that she was devastated by the incident. The Court allowed photographs before the incident, finding that they related to a period

of time when R.A. and Petitioner were reconnecting and admitted them as relevant to reveal their relationship, including inferences going to Petitioner's consent theory defense. (Lodg. No. 2, RT vol. 1 at 13-14.)  However, as to the photographs of R.A.'s Las Vegas trip, the trial court found little relevance value expressing doubt on whether the defense could attack her credibility in the pretext call. (*Id.* at 14-16.)  This issue resurfaced twice during trial and the trial court reaffirmed its decision both times.  (*Id.* at 269, 477.)

The Court of Appeal affirmed the trial court's exclusion, finding the pictures were of suggestive poses and therefore sexual conduct within the meaning of California Evidence Code §§ 782 and 1103. (Lodg. No. 7 at 9-10.)  The Court of Appeal also found the photos and comments were "minimal" on the issue of R.A.'s credibility and misleading or confusing by focusing on her conduct, therefore the trial court's exclusion under California Evidence Code § 352 was not an abuse of exclusion:

> The pictures were taken and posted after the rape incident, and therefore were not relevant on the issue of whether R.A. consented to sexual intercourse with Greenspan.  Whatever claimed probative value the photos had - specifically regarding Greenspan's claim that they undermined R.A's credibility because they contradicted her demeanor at trial - was minimal, and outweighed by the prejudice they would have caused in terms of confusing the issues for the jurors, and misleading them into focusing on R.A.'s conduct after the incident in Las Vegas.

(Lodg. No. 7, slip op. at 9-10)  Moreover, their exclusion did not deny Petitioner the right to confront and cross-examine witnesses under the Sixth Amendment.

A state court decision may be overturned and a writ issued only when the state court decision is contrary to, or involved an unreasonable application of an authoritative decision of the Supreme Court.  *See Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  A decision involves an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Hernandez v. Small*, 282 F.3d 1132, 1142 (9th Cir. 2002).

Petitioner objects to the R&R's affirmation of the Court of Appeal's conclusion, specifically that the photographs were of limited relevance which "unreasonably narrowed the effect of the posting." (Doc. No. 16 at 20.) Petitioner contends that the photographs were "unequivocal evidence that R.A. was anything [but] traumatized . . . would have been critical evidence to show her claim she was traumatized was an act, and from that, that her claim of rape was also false." (*Id.*) Moreover, Petitioner argues that this evidence was necessary to call into question R.A.'s credibility, which played a crucial factor in the prosecution of this case. (*Id.* at 21.) Finally, Petitioner claims that R.A. "cried rape because she did not want to jeopardize her on again/off again relationship with her boyfriend Gabe," and the R&R incorrectly minimized this claim. Thus exclusion amounted to a Confrontation Clause violation and the Court of Appeal's decision was objectively unreasonable as the court "unreasonably applied the law to the facts." (*Id.* at 2.)

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witness against him." *See Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431 (1986). Exposing a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Id.* (citing *Davis v. Alaska*, 415 U.S. 308, 316-317, 94 S. Ct. 1105 (1974). In determining whether a defendant's Confrontation Clause right was violated, a court looks to three factors: (1) whether the excluded evidence was relevant; (2) whether there were other legitimate interests outweighing the defendant's interest in presenting the evidence; and (3) whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness. *U.S. v. Larson*, 495 F.3d 1094, 1103 (9th Cir. 2007). Trial judges are afforded wide latitude insofar as the Confrontation Clause is concerned to impose limits on cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant. *Van Arsdall*, 475 U.S 678-79.

1    After considering these factors and the record before it, the Court is unable to

2    declare a violation of Petitioner's right to confront or cross-examine the witness based on

3    the exclusion of the Las Vegas photographs.

4    First, a review of the record shows the primary purpose for seeking their inclusion

5    was to use that evidence to undermine the complainant's testimony on the "tangential

6    issue of the purported severity of her post-incident trauma." (*See* Doc. No. 15 at 21.)

7    The photographs were never used to establish R.A.'s motive to lie about the forcible

8    nature of the encounter.  In admitting some photographs from R.A.'s social media sites

9    posted before the incident, the trial court distinguished the relevance of those photo-

10   graphs from the excluded ones.  The trial court found that the admitted photographs

11   related to a period of time when R.A. and Petitioner were reconnecting and thus admitted

12   them as relevant to reveal their relationship and any inferences going to Petitioner's

13   theory of consent.  However, as to the probative value of the Las Vegas pictures, the trial

14   court found it "not enormous."  (Lodg. No. 2, RT vol. 1 at 13-14.)  The Court of Appeals

15   agreed finding that the pictures were taken and posted after the incident, thus not

16   relevant on the issue of consent. ((Lodg. No. 7, slip op. at 9-10).

17   Second, the trial court found the Las Vegas photographs to be "character evi-

18   dence." (Lodg. No. 2, RT vol. 1 at 19-21.)  The trial court reasonably feared that the Las

19   Vegas photographs of R.A. partying could be interpreted as character evidence.  Thus

20   excluded the pictures based on the finding that they had no probative value on the issue

21   of consent and only speculative value to show R.A. was not traumatized by her encoun-

22   ter with Petitioner and therefore it must have been consensual rather than forcible.  The

23   Court of Appeal concurred with the trial court's ruling.

24   Third, the exclusion of the Las Vegas photographs did not leave the jury with

25   insufficient information to assess the credibility of the witness.  As noted above, the trial

26   court admitted some photographs that tended to show the development of Petitioner's

27   relationship with R.A., thus allowing the jury to consider the theory of consent.  Defense

28   counsel vigorously cross-examined R.A., suggested potentially impeaching interpreta-

12cv2402

1   tions of her conduct with Petitioner, their interactions in the days leading up to the

2   incident, and her prior statements.  Though the Court is sympathetic to Petitioner's

3   position and indeed agrees with the trial court's characterization that this was a sad case,

4   the Court does not find that exclusion of the Las Vegas photographs rose to the level of a

5   constitutional violation.

6        Petitioner's Objection primarily relies on *Olden v. Kentucky*, 488 U.S. 227 (1988)

7   to argue that the California courts and the R&R were incorrect in holding the photo-

8   graphs were erroneously excluded. (*Id.* at 20.)  *Olden* involved the prosecution of a black

9   defendant for rape, kidnaping, and sodomy. *Olden*, 488 U.S. at 228.  The petitioner had

10  asserted a defense of consent and asserted, all throughout trial, the alleged victim

11  concocted the rape story to protect her relationship with her then live-in boyfriend.  The

12  defendant argued it was crucial he be allowed to introduce evidence of their cohabitation

13  to show the alleged victim's motive to lie.  *Id.* at 229-30.  However, the trial court

14  excluded all evidence of the victim's living arrangement, even when she testified on

15  direct examination that she was living with her mother. *Id.* at 230.  In reversing, the

16  Supreme Court found that the trial court' refusal to permit the defendant from cross-

17  examining the complainant regarding her cohabitation violated the defendant's Sixth

18  Amendment right to confront the witness, as such evidence was relevant to defendant's

19  claim that he and complainant engaged in consensual sexual acts.  The *Olden* Court

20  identified complainant's motive to lie and found the excluded evidence had impeach-

21  ment value to support her motive to lie. *Id.* at 232.

22       The Court agrees with the R&R that *Olden* is distinguishable from the case at

23  hand. (*See* Doc. No. 15 at 20.)  In *Olden*, the petitioner consistently asserted that he and

24  the complainant engaged in consensual sexual acts and therefore lied about being raped

25  out of fear of jeopardizing her relationship with her live-in boyfriend.  Thus,  denying the

26  petitioner the opportunity to cross-examine her about her cohabitation when she testified

27  she lived with her mother amounted to a Confrontation Clause violation as a "reasonable

28  jury might have received a significantly different impression of [the witness'] credibility

had [defense counsel] been permitted to pursue his proposed line of cross examination. *Olden,* 488 U.S. 232.

The Court agrees with the Magistrate Judge's characterization that R.A.'s motive to lie, and any inference and probative value that may be revealed by the Las Vegas photographs are "vastly more tenuous" than in *Olden*." (Doc. No. 15 at 21.)  Notably, as stated above, trial counsel's primary purpose in seeking inclusion of the photographs was to counter R.A.'s testimony on the severity of her post-incident trauma.  Though Petitioner presents a plausible theory that the photographs show R.A. was not trauma-tized, therefore she lied when she testified to the contrary, and thus the entirety of her testimony is not credible, such an inferential link is too attenuated for this Court to disturb the findings of the trial judge, who directly presided over the case and had firsthand knowledge of all the relevant facts and evidence.

Accordingly, the Court OVERRULES Petitioner's objections and ADOPTS the R&R's findings and conclusion for Ground One.

**B.      Ground Two: Ineffective Assistance of Counsel**

Petitioner seeks relief from the California Courts failure to hold an evidentiary hearing on whether Petitioner was denied effective assistance of counsel because he was not told of a potential plea offer.  The R&R recommended the Court deny Petitioner's claim after finding Petitioner failed to show the state court reached an unreasonable result under the deferential exceptions of 28 U.S.C. § 2254(d)(1) or (d)(2).  Petitioner objects to the R&R's failure to use a *de novo* standard in reviewing the state court decision on the matter.

To establish ineffective assistance of counsel, a "defendant must show both deficient performance by counsel and prejudice." *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121, 129 S. Ct. 1411, 1419 (2009)).  The Supreme Court, in explaining the standard and its relationship to the AEDPA, writes

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of

> reasonableness.' *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052 (1984). A court considering a claim of ineffective assistance must apply a strong presumption' that counsel's representation was within the wide range' of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Id.*

*Harrington v. Richter,* 131 S. Ct. 770, 787 (2011) (internal quotation marks omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473 (2010).

The factual allegations concerning this issue are as follows.  Petitioner's trial attorney, Mr. Patton, told Petitioner the prosecution would move to dismiss the charge of rape in exchange for a plea of guilty to a felony charge of false imprisonment with a recommendation of no prison or jail time, but he would be required to register as a sex offender. (Lodg. 17, Ex. E.)  Petitioner refused the offer because he was told he would have to register as a sex offender.  (*Id.*)  After trial and during a February 25, 2009 sentencing hearing, the prosecutor made the following statement in open court:

> MS. CANO: Your honor, I think this was a sad case for all parties and I think that is why Mr. Patton who is an excellent attorney tried to persuade me to accept an offer 236, 237 which would have been a felony. Could have been reduced to a misdemeanor and would have had no 290 or sex offender registration for the rest of his life. Reluctantly I agreed to that.  Within five minutes Mr. Patton called me back after speaking to the family and it was the arrogance of the family that now ties the court's hand.  It is the family that decided, no, we are going forward.  And I think . . . the only option for this court is to give him the three years that is mandated by law.

(Lodg. No. 2, RT vol. 5 at 683.)

According to Petitioner, he and his family were shocked to hear this because they had been told the plea for false imprisonment would require lifetime sex offender registration. (Doc. No. 16 at 23.)  Petitioner and family members spoke to Ms. Denevi, his counsel during sentencing, that no such pre-trial offer, without a PC 290 registration, had been communicated to them. (*Id.*)

Petitioner presented the claim of ineffective assistance of counsel for failure to convey the pre-trial offer in his Superior Court Petition.  (Lodg. No. 16 at 2.)  That court considered the merits and evidence presented by Petitioner and the prosecution, includ-

12cv2402

ing signed declarations submitted by Mr. Patton and Deputy District Attorney Cano.  The court found, contrary to Petitioner's claim, an offer that did not include lifetime registration as a sex offender was never made.  Mr. Patton's declaration, signed under penalty of perjury, stated "[m]y suggested resolution was for Kyle to plead guilty to a reducible felony (PC 237) with no PC 290 registration.  At no time did the District Attorney's office extend an offer of settlement of PC 26/237 with no PC 290 registration requirement.  Ms. Cano never indicated to me that her office would agree to this resolution.  Nor did Kyle or his family give me authority to make that specific offer of settlement in this case." (Patton Declaration, page 4:9-13) (Lodg. No. 16 at 3.)

Ms. Cano's Declaration, signed under penalty of perjury, confirmed Mr. Patton's account by stating: "I went back to my office with the intention of discussing the counter offer with [my supervisor] but, stopped in my office before going into her office.  Within minutes of reaching my office, Mr. Patton called me and told me not to bother running the offer by my supervisor because Mr. Greenspan was not interested in pleading guilty to any charge.  I never discussed Mr. Patton's counter offer with my supervisor because I considered it withdrawn." (Cano Declaration, page 3:20-24) (Lodge. No. 16 at 3.)

The state court noted that "[t]he problem in this case is not with the above quotations that clearly indicates no offer was made and thus, there can be no claim or failure to convey an offer that did not exist. Rather, Deputy Cano readily admits she made an 'off the cuff' reference during the sentencing hearing . . . [She] failed to be more precise about the fact that [she] agreed to discuss it with [her] supervisor. But, [she] was intercepted by Mr. Patton before [she] had a chance to do so. [She] never agreed to any offer made by Mr. Patton." (*Id.* at 3-4.)  Additionally, the Superior Court was presented with declarations submitted by Petitioner, family members, as well as Petitioner's post-trial defense counsel. (*See* Lodg. No. 15; *see also* Lodg. No. 17.)  The court concluded that the evidence presented does not justify the conclusion that the prosecution made the offer but Mr. Patton failed to present the offer to Petitioner. (*Id.* at 4.)  The R&R found

12cv2402

1  the state court, "relying on competent evidence in the record, thus resolved this claim in

2  an objectively reasonable manner."

3       Petitioner disputes the R&R's finding that "this case does not fall under the ambit

4  of *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012)" and argues the R&R overlooks

5  Petitioner's claim that the California Courts failed to follow their own habeas procedure

6  as set forth by *People v. Duvall*, 9 Cal.4th 464, 474 (1995). (Doc. No. 16 at 26.)

7  Petitioner contends that the error alleged, the failure to convey a *potential* pre-trial offer,

8  was a critical error thus amounting to an ineffective assistance of counsel claim under

9  *Frye* and *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), which requires effective assistance

10  "both prior to trial during plea negotiations as well as performance during trial." (Doc

11  No. 16 at 26.)  Petitioner objects to the R&R's  narrow reading of *Frye*. (*Id.*)

12       The R&R found that Petitioner's characterization of trial counsel's allegedly

13  deficient performance rested on the failure to convey a *possible* or *potential* offer he

14  would have accepted.  However, *Frye* only establishes the duty to communicate a *formal*

15  offer, therefore his claim for relief and request for an evidentiary hearing should be

16  denied.  (Doc. No. 15 at 27) (citing *Frye*, 132 S. Ct. at 1408-09).

17       There is no doubt that the Sixth Amendment right to effective assistance of

18  counsel extends to the negotiation of a plea bargain, as it is a critical stage for

19  ineffective-assistance purposes.  *See Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct.

20  1473 (2010) (noting that it has been 25 years since the Supreme Court first applied

21  *Strickland* to claims of ineffective assistance at the plea stage).  Ineffective assistance

22  has been found where counsel failed to correctly convey plea offer terms, *Nunes v.*

23  *Mueller*, 350 F.3d 1045, 1056 (9th Cir. 2003), and where counsel failed to inform

24  defendant the government had made a plea offer, *see U.S. v. Blaylock*, 20 F.3d 1458,

25  1466 (9th Cir. 1994).  However, Petitioner has not cited, and the Court has not found,

26  any precedent finding an ineffective assistance of counsel claim based on counsel's

27  failure to inform defendant of a potential plea offer.

28

12cv2402

1    Instead, Petitioner asks the Court should look to the rationale of *Frye* in the instant

2  case, which holds that the Sixth Amendment effective assistance requirement applies to

3  plea negotiations. (*See* Doc. No. 16 at 26.)  Even considering the rationale of *Frye*, the

4  Court is unable to declare Mr. Patton's failure constitutes deficient performance under

5  *Strickland* standards.  *See Frye*, 132. S.Ct. at 1402 ("*Stickland's* two part test governs

6  ineffective assistance claims in the plea bargain context.").  The Court cannot conclude

7  that it was "objectively unreasonable" for counsel to not communicate a potential offer

8  that has not been finalized or approved.  Such inaction may be due to a variety of

9  reasons.  Some examples include, not wishing to raise the hopes and expectations of a

10  defendant and family members when formalization of an offer is tenuous or when a

11  potential offer still requires the approval of supervising attorneys which may take some

12  time.  Petitioner argues that the error alleged, a failure to communicate the potential pre-

13  trial offer, "was a critical error that derailed any later plea negotiations."  However, such

14  a contention is much too speculative for this Court to disturb the findings of the State

15  Courts.

16    The *Frye* Court's explanation of why negotiation of a plea bargain is a critical

17  stage rested on the reality that plea bargains are central to the administration of the

18  criminal justice system, and thus defense counsel have responsibilities during the

19  bargaining process as well.  *Id.* at 1407.  Benefits of plea bargaining include conserva-

20  tion of valuable prosecutorial resources and for defendants to receive more favorable

21  terms.  *Id.* However, in order for these benefits to be realized, criminal defendants

22  require effective counsel during plea negotiation. *Id.* at 1408.  In the instant case, these

23  benefits would not have been realized as there was never a formal offer on the table.

24  Without established precedent suggesting otherwise, the Court does not find Mr. Patton

25  to have breached any duty or responsibility simply for failing to convey a possible offer

26  that was being negotiated on.  Therefore, the Superior Court's finding was not contrary

27  to or an unreasonable application of *Strickland*, nor an unreasonable determination of the

28  facts from the record. 28 U.S.C. § 2254(d).

12cv2402

1   Accordingly, the Court OVERRULES Petitioner's objections and ADOPTS the

2   R&R's recommendation to deny Petitioner's relief based upon the ineffective assistance

3   of counsel claim.

4   **C.   Request for an Evidentiary Hearing**

5   In determining whether a petitioner is entitled to an evidentiary hearing under

6   AEDPA, a court must determine whether a factual basis exists in the record to support

7   the petitioner's claim.  If it does not, and an evidentiary hearing might be appropriate, the

8   court's first task in determining whether to grant an evidentiary hearing is to ascertain

9   whether the petitioner has failed to develop the factual basis of a claim in State court.  If

10  the applicant has not failed to develop the facts in state court, the district court may

11  proceed to consider whether a hearing is appropriate or required under *Townsend v. Sain*,

12  372 U.S. 293, 83 S. Ct. 745 (1963) (overruled on other grounds).  *Earp v. Ornoski*, 431

13  F.3d 1158, 1166 (9th Cir. 2005) (internal citations and quotation marks omitted).

14  Under *Townsend,* there are six circumstances that may entitle a petitioner to an

15  evidentiary hearing: (1) the merits of the factual dispute were not resolved in the state

16  hearing; (2) the state factual determination is not fairly supported by the record as a

17  whole; (3) the fact-finding procedure employed by the state court was not adequate to

18  afford a full and fair hearing; (4) there is a substantial allegation of newly discovered

19  evidence; (5) the material facts were not adequately developed at the state-court hearing;

20  or (6) for any reason it appears that the state trier of fact did not afford the habeas

21  applicant a full and fair hearing.

22  Petitioner objects to the R&R for its failure to apply a *de novo* standard in

23  reviewing the state court decision denying an evidentiary hearing. (Doc. No. 16 at 26.)

24  However, a federal court may not independently review the merits of a state court

25  decision without first applying the AEDPA standards.  In other words, a federal court

26  may not grant an evidentiary hearing without first determining whether the state court's

27  decision was an unreasonable determination of the facts. *Earp*, 431 F.3d at 1166-67

28  (citing *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166 (2003)); *see Schriro v.*

*Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933 (2007) ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.").  However, if a defendant can establish any one of the *Townsend* circumstances, then a federal court may reasonable conclude the state court's decision was based on an unreasonable determination of the facts and independently review the merits of that decision by conducting an evidentiary hearing.  *Earp*, 431 F.3d at 1167.

Petitioner argues that the state court record is insufficient to decide the claim of ineffective assistance of counsel as the Superior Court's finding was made without the benefit of an evidentiary hearing. (Traverse, Doc. No. 14 at 34-35)  Moreover, Petitioner argues an evidentiary hearing is warranted by the failure of the California Courts to follow their own procedures, therefore justifying this Court to afford no deference to the state court ruling on the issue. (Doc. No. 16 at 26.)

Petitioner contends the California Courts failed to follow "its own habeas corpus procedures, as set forth in *People v. Duvall*, 9 Cal.4th 464, 474 (1995)," there by denying him Due Process of law. (Doc. No. 16 at 26.)  Petitioner states that there was a clear factual dispute as to what was or was not conveyed to him, however the Superior Court made a credibility decision based on the declarations of Ms. Cano and Mr. Patton, even where they were directly contradicted by the declaration of Petitioner's family members as to what was conveyed to him as a potential offer. (*Id.*)   Under California law, "[a]n appellate court receiving such a [habeas] petitioner evaluates it by asking whether, assuming the petitioner's factual allegations are true, the petitioner would be entitled to relief."  If the court "finds the factual allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC."[1]  *Duvall*, 9 Cal.4th at 474-75.  Issuance of an OSC indicates the issuing court's preliminary assessment that the petitioner would be entitled to relief if his factual allegations are proved. *Id.* at 475.

---

[1] Order to show cause.

12cv2402

1  A review of the record finds that the state proceedings did indeed follow the

2  procedure as established in *Duvall*.  In February 2010, while his direct appeal remained

3  pending, Petitioner filed a petition for writ of habeas corpus in the California Court of

4  Appeal.  That petition included the instant claim of ineffective assistance of counsel.

5  That petition was consolidated with the pending appeal. (Lodg. No.13.)  The appellate

6  court then issued an order to show cause why the relief sought in the petition should not

7  be granted and instructed, in pertinent part, that "the order to show cause is made

8  returnable before the superior court" and directed the Superior Court to "hear and

9  determine the matter." (Lodg. No. 13, Docket in Case No. D056822 at 1.)  The Superior

10  Court's order denying Petitioner's habeas relief reached and rejected the merits of the

11  ineffective assistance of counsel claim after a careful review of declarations submitted

12  from both parties, and therefore denied Petitioner's request for an evidentiary hearing as

13  unnecessary. (Lodg. No. 16.)

14  After reviewing the record before it, the Court finds that Petitioner has not shown

15  the need for an evidentiary hearing under *Townsend*.  Petitioner's allegations can be

16  construed as an attempt to establish the second *Townsend* circumstance, where a state

17  factual determination is not fairly supported by the record as a whole or the sixth

18  circumstance, where it appears the state court did not afford a full and fair hearing.

19  *Townsend v. Sain*, 372 U.S. at 313 (overruled on other grounds by *Keeney v. Tamayo-*

20  *Reyes*, 503 U.S. 1., 112 S. Ct. 1715 (1992)).  However, the Superior Court's determina-

21  tion of the issue was grounded upon a review of declarations submitted, signed under

22  penalty of perjury, by both the Deputy District Attorney and Petitioner's trial counsel.

23  Both attested that there had been talks of a potential plea that did not include lifetime

24  registration as a sex offender, however, no formal offer was made.  Therefore, the

25  Superior Court's factual finding, that no specific offer containing terms that included

26  avoidance of sex offender registration, rested on competent evidence in the record and

27  was fairly supported by the record as a whole.  Accordingly, as the state court reached

28  the merits of Petitioner's ineffective assistance of counsel claim and because Petitioner

12cv2402

has failed to show the state court decision was an unreasonable determination of the facts, the R&R was correct in applying the "highly deferential" standard rather than a *de novo* review.  Coupled with the Court's previous finding, that a failure to convey a potential offer does not amount to ineffective assistance of counsel, the Court agrees that an evidentiary hearing is neither warranted nor permissible under the AEDPA.

The Court thus OVERRULES Petitioner's objections and ADOPTS the R&R's recommendation to DENY Petitioner's request for an evidentiary hearing.

**D.      Remaining Grounds for Relief**

Petitioner's ineffective assistance of counsel claim includes two other basis seeking relief: (1) counsel failed to investigate and present video of the victim's post-incident conduct and (2) counsel failed to interview and call character witnesses. (Doc. No. 1 at 11-14.)  The R&R recommended this Court deny relief based on these two additional claims.  (Doc. No. 15 at 28-33.)  Petitioner makes no objection to this recommendation. (Doc. No. 16 at 2.)

In the absence of objections, the Court "need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b), Advisory Committee Notes (1983); *see also United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Having reviewed the R&R, the Court finds the report is thorough, well-reasoned, and contains no clear error.  Accordingly, the Court ADOPTS the R&R's analysis and conclusion with regards to these aspects of Petitioner's claim.

**D.      Certificate of Appealability**

When a district court enters a final order adverse to the applicant in a habeas proceeding, it must either issue or deny a certificate of appealability, which is required to appeal a final order in a habeas proceeding. 28 U.S.C. § 2253(c)(1)(A).  A certificate of appealability is appropriate only where the petitioner makes "a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S.322, 336 (2003).  Under this standard, the petitioner must demonstrate that reasonable jurists could debate

whether the petitioner should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. 28 U.S.C. § 2253; *Slack v. McDaniel*, 529 U.S. 473, 474 (2000). In the instant case, the Court finds that reasonable jurists could not debate whether the petition should have been resolved differently.

**IV.    CONCLUSION**

This was a difficult case to resolve and the Court reiterates its sympathy to all parties involved. However, given the record before it, the Court is unable to provide federal habeas relief. For the foregoing reason, the Court hereby:

(1) OVERRULES Petitioner's Objection;

(2) ADOPTS the well-reasoned R&R in its entirety;

(3) DENIES the Petition for Writ of Habeas Corpus;

(4) DENIES Petitioner's request for an evidentiary hearing; and

(5) DECLINES to issue a Certificate of Appealability.

IT IS SO ORDERED.


DATED:  January 16, 2014

Hon. Anthony J. Battaglia
U.S. District Judge

12cv2402